UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGINETTA B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02430-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Anginetta B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Social Security application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d). For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

**I. Background**

This matter is Claimant's third request for judicial review of an unfavorable disability determination. Claimant applied for DIB on January 8, 2014, alleging a disability onset of

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

September 17, 2013. [Dkt. 15-2 at 67.] Claimant first appeared for a hearing before ALJ Gladys Whitfield on January 5, 2016. [Dkt. 15-2 at 3.] ALJ Whitfield issued an unfavorable decision on March 23, 2016, and the Appeals Council subsequently denied Claimant's request for review. [Dkt. 15-2 at 64, 39.] Claimant filed a Complaint in this Court seeking judicial review on April 28, 2017, Case No. 1:17-cv-1357-SEB-DML. After a joint motion for remand, District Judge Sarah Evans Barker reversed and remanded the ALJ's decision on October 23, 2017. [Dkt. 15-9 at 8.]

On September 25, 2018, Claimant's first remand hearing was held before ALJ Whitfield. [Dkt. 15-8 at 32.] On January 28, 2019, ALJ Whitfield issued a partially favorable decision, finding that Claimant became disabled on December 1, 2017, but was not disabled prior to that date. [Dkt. 15-8 at 2.] Claimant filed a Complaint in this Court seeking judicial review on April 3, 2019, Case No. 1:19-cv-1339-JRS-TAB. Following another joint motion to remand, District Judge James Sweeney II reversed and remanded the ALJ's decision on October 21, 2019. [Dkt. 15-15 at 30.]

On June 19, 2020, Claimant's second remand hearing was held before ALJ Kevin Walker to determine whether Claimant was disabled prior to December 1, 2017. [Dkt. 15-14 at 34.] On July 14, 2020, ALJ Walker issued an unfavorable decision and found that Claimant was not disabled during the relevant period from September 17, 2013, to November 30, 2017. [Dkt. 15-14 at 23.] Claimant timely filed her Complaint on September 21, 2020, seeking judicial review of ALJ Walker's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence, but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its

judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III.  ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity during the relevant period from her alleged onset date of September 17, 2013, through November 30, 2017. [Dkt. 15-14 at 7.] At step two, the ALJ found that Claimant had the following severe impairments: "migraines, thyroid impairment, degenerative disc disease, and carpal tunnel syndrome." [Dkt. 15-14 at 8.] At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. [Dkt. 15-14 at 10.] The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she could stand and or walk for up to 30 minutes at one time, up to two hours total in an eight-hour workday. She could sit for up to six hours in an eight-hour workday. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could occasionally balance and stoop but never kneel, crouch, or crawl. She could occasionally reach overhead bilaterally. She could frequently reach in all other directions bilaterally. She could occasionally operate foot controls with her left lower extremity. She could not operate motor vehicles. She could have occasional exposure to concentrated wetness or humidity, or to extreme heat, cold, or vibration. She could have frequent exposure to pulmonary irritants, including dusts, fumes, odors, and gases. She could have no exposure to unprotected heights or hazardous machinery. She could have moderate noise exposure.

[Dkt. 15-14 at 11-12.]

At step four, the ALJ found that Claimant was unable to perform any past relevant work during the relevant time period. [Dkt. 15-14 at 22.] At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant could have performed jobs that exist in the national economy during the relevant time period. [Dkt. 15-14 at 22.] For example, the VE

testified that the hypothetical person described by the ALJ would be able to work as a sedentary and unskilled document preparer, touch up screener, or addresser. [Dkt. 15-14 at 23.] Accordingly, the ALJ concluded that Claimant was not disabled from September 17, 2013, through November 30, 2017. [Dkt. 15-14 at 23.]

## IV.  Discussion

Claimant advances two arguments in support of her request to reverse ALJ Walker's decision. First, she argues that the ALJ erred by failing to account for Claimant's non-severe mental limitations in his RFC assessment and hypothetical questions posed to the VE. [Dkt. 19 at 18.] Second, Claimant argues that the ALJ erred in his "evaluation of the intensity, persistence, and limiting effects of her symptoms." [Dkt. 19 at 22.] The Court addresses each argument in turn below.

### A.  RFC Issue

First, Claimant argues that, after finding that Claimant had "mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself," the ALJ erred by failing to account for these limitations in his RFC assessment and hypothetical questions posed to the VE. [Dkt. 19 at 18.] In response, the Commissioner asserts that "[t]he ALJ adhered to the regulations when he found Plaintiff did not have a mental impairment that resulted in a work-related limitation." [Dkt. 23 at 8.]

"[W]hen a claimant has at least one severe impairment . . ., [she] is entitled to have the ALJ evaluate whether the combination of [her] non-severe and severe impairments impose any functional limitations." *Jeremy L. J. v. Saul*, 2020 WL 1033795, at *5 (S.D. Ind. Feb. 14, 2020) (referencing *Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987)). Indeed, "[t]he ALJ cannot merely conclude from non-severity that no limitations are necessary." *Id.* "The duty to analyze non-

5

severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act." *Id.* As the Seventh Circuit has explained, ALJs are required to "consider the limitations imposed by all impairments, severe and non-severe," when determining a claimant's RFC. *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (citing 20 C.F.R. § 404.1523; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)).

Here, ALJ Walker found that Claimant had "mild" limitations in "understanding, remembering, or applying information," "concentrating, persisting or maintaining pace," and "adapting or managing oneself." [Dkt. 15-14 at 9-10.] The ALJ also stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." [Dkt. 15-14 at 10.] Despite this, ALJ Walker made no mention of these limitations in his RFC. *See* [Dkt. 15-14 at 11-12]. Even though Claimant's mental limitations were non-severe, the ALJ was still obligated to consider how those mental limitations might interact with her severe physical impairments and "to explain why this evidence does not require at least some nonexertional limitations to Plaintiff's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017); *Crump*, 932 F.3d at 570 (explaining that the ALJ must assess a claimant's RFC by "incorporat[ing] all of the claimant's limitations supported by the medical record"). ALJ Walker also did not include Claimant's mild mental limitations in the hypotheticals posed to the VE. *See Crump*, 932 F.3d at 570 ("When the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs."). This failure to account for Claimant's mild psychological limitations, both in the RFC and in the hypotheticals posed to the VE, warrants remand. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933-34 (N.D. Ill. 2011) (finding reversible error where the ALJ "did not include any mental functioning

restrictions in his RFC finding," and thus the claimant's "mental functioning limitations could not be taken into account in the step-four finding").

### B. Symptoms Issue

Second, Claimant argues that ALJ Walker's "evaluation of the intensity, persistence, and limiting effects of her symptoms is patently wrong." [Dkt. 19 at 22.] In response, the Commissioner asserts that the ALJ properly considered the medical evidence, medical opinions, and Claimant's subjective symptoms and therefore did not err in his RFC finding. [Dkt. 23 at 14.]

An ALJ's credibility determinations are generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, at 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).

Here, ALJ Walker stated as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 15-14 at 13.] ALJ Walker continued:

> claimant retained the ability to perform a range of sedentary exertional work from September 7, 2013 through November 30, 2017. The claimant primarily alleged pain that affected her ability to perform exertional and postural activities. However, the claimant's MRI results from this period showed disc bulges in her lumbosacral spine that did not significantly displace the right S1 or L5 nerve root and only mildly displaced the left L5 nerve root. Though the claimant was observed using a cane at appointments during this time, it was not prescribed and was not identified as medically necessary in Dr. Silbert's opinion statements. The claimant was observed to have a limited range of motion at appointments with Dr. Silbert, yet she retained normal motor functioning in her extremities. She had symmetrical

7

> reflexes and normal sensation. . . . The claimant generally managed her symptoms with medication during the period being adjudicated. She declined to pursue physical therapy, additional injections, a spinal cord stimulator, or a neurological follow up, suggesting her pain and headaches were adequately controlled on her treatment regimen. She continued to perform a broad range of daily activities, including bathing, dressing, caring for herself, cooking simple meals, doing light household chores, driving short distances, shopping in stores, attending church, managing funds, and going to medical appointments. The overall record supports the above residual functional capacity assessment through November 30, 2017.

[Dkt. 15-14 at 18.]

After reviewing the entire record, it becomes increasingly obvious that the ALJ has downplayed or misinterpreted the evidence of record in several respects and thus the requisite logical bridge is absent from ALJ Walker's determination.

First, in suggesting that a mild impingement of the L5 nerve root couldn't be responsible for Claimant's limiting pain, ALJ Walker has "succumb[ed] to the temptation to play doctor and [made his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Indeed, Listing 1.04 does not specify whether the requisite "compromise of a nerve root" be mild or significant, and without a supporting medical opinion it was not the ALJ's place to determine how much or little pain may result. *See* 20 C.F.R. pt. 404, subpart P, App. 1, 1.04(A).

Second, the Court agrees with Claimant that the record reveals that the ALJ "consistently downplays or omits how severely limited [Claimant's] lumbar forward flexion was on several of her visits to Dr. Silbert." [Dkt. 19 at 23-24.] For example, there are several occasions where the ALJ notes that Claimant had a decreased or limited range of motion in her lumbar spine but does not acknowledge the degree of limitation which, at times, was as low as ten degrees. *See* [Dkt. 19 at 24-25]. The Commissioner responds that the ALJ was not obligated to "describe findings in the same detail as that provided by the examining physician." [Dkt. 23 at

8

14.] While that is true, an ALJ must nonetheless "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Such vastly limited range of motion supported Claimant's alleged disability status, and so by downplaying its severity, the ALJ failed to confront evidence in Claimant's favor. Additionally, "a cane does not require a prescription," and suggesting otherwise in support of discounting Claimant's subjective symptoms is improper. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

Third, the ALJ did not inquire as to why Claimant "declined to pursue physical therapy, additional injections, a spinal cord stimulator, or a neurological follow up," and simply assumed that doing so meant her symptoms were managed. [Dkt. 15-14 at 18.] "Although a history of sporadic treatment or failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citing Social Security Ruling 96-7p, 1996 WL 374186, at *7). Doing so may require the ALJ to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.* (citing Social Security Ruling 96-7p, 1996 WL 374186, at *7). Even still, the ALJ's assertion that Claimant's symptoms were relieved with medication and treatment is explicitly contradicted by Claimant's testimony. *See* [Dkt. 15-14 at 46].

Finally, the ALJ relies on his assessment of Claimant's daily activities, but the Seventh Circuit has "previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas*, 953 F.3d at 467 (citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Bjohnson v. Astrue*, 671 F.3d

9

640, 647 (7th Cir. 2012)). In any case, ALJ Walker seems to mischaracterize Claimant's testimony regarding her daily living. The ALJ stated that Claimant "continued to perform a broad range of daily activities, including bathing, dressing, caring for herself, cooking simple meals, doing light household chores, driving short distances, shopping in stores, attending church, managing funds, and going to medical appointments." [Dkt. 15-14 at 18.] In reality, however, Claimant testified that, during the relevant time period, although she tried to cook, she often could not finish preparing a meal because the pain forced her lie down "and rest for about an hour." [Dkt. 15-14 at 52.] She also testified that she could not clean nor do laundry, and that she was only able to dust what was around her before needing to rest. [Dkt. 15-14 at 53.] Claimant would go to the grocery store with her husband, but required an electric wheelchair to do so. [Dkt. 15-14 at 53, 56.] Further, although she tried to go to church, her pain often prevented her from staying longer than thirty minutes and sometimes prevented her from going at all. [Dkt. 15-14 at 53-54.] Accordingly, the ALJ's determination regarding the intensity, persistence, and limiting effects of Claimant's symptoms fails to properly consider relevant evidence in a balanced manner and does not convince the Court that meaningful consideration has taken place.

In sum, the ALJ erred by failing to account for Claimant's non-severe mental limitations in his RFC assessment and hypothetical questions posed to the VE, and he did not appropriately evaluate the intensity, persistence, and limiting effects of Claimant's symptoms. As such, ALJ Walker's decision is **REVERSED** and **REMANDED**. On remand, the ALJ must consider how Claimant's mental limitations might interact with her severe physical impairments, must include such considerations in hypotheticals to the VE, and must appropriately consider **all** relevant evidence when determining the intensity, persistence, and limiting effects of Claimant's symptoms during the relevant time period.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 18 NOV 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.